UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDIA McGEE,

    Plaintiff,

v.

CCLA 9 LLC, d/b/a "RIVERVIEW HEALTH
AND REHAB CENTER,"

    Defendant.
    _____/

Case No. 14-14897

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [20]**

    This matter comes before the Court on Defendant's motion for summary judgment. Plaintiff brings claims against her former employer CCLA 9 LLC, doing business as Riverview Health and Rehab Center ("Defendant"), pursuant to the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"). For the reasons stated herein, Defendant's motion is denied.

**I.    Facts**

    Plaintiff suffers from lower extremity lipedema. (Dkt. 1, at ¶ 6.) According to Plaintiff, this disorder "causes fat deposits to build up in the legs," resulting in "large lower half and column-like legs, which are often tender and bruise easily." (Dkt. 22, at 5-6.) Plaintiff, diagnosed around 1990, claims this condition inhibits her ability to walk. (Dkt. 1, at ¶ 6; Dkt. 22, at 6.) Plaintiff began working for Defendant, which provides assisted living services to the elderly and infirm, as a staffing coordinator on January 18, 2013. (Dkt. 22-2, at ¶ 10; Dkt. 22-3.) Plaintiff's primary responsibility as a staffing coordinator was to "ensure adequate and appropriate staffing of the nursing department." (Dkt. 22-4, at 2.) Additional

responsibilities included, for example: answering employee calls regarding staffing/scheduling, entering employee schedules in the computer system prior to the last day of each month; and adjusting schedules for vacation and time off requests. (*Id.* at 2-3)

According to an examination performed prior to Plaintiff's hire, Plaintiff could perform the essential functions of her position. (Dkt. 22-5.) Plaintiff performed most of her work from her office, but also had to go to the different nursing units on other floors on a daily basis to check on staff and post scheduling information. (Dkt. 22-2, at ¶¶ 14-15.) Plaintiff initially had an office in the basement, but was moved to the first floor two months after she began work. (*Id.* at ¶ 12.) Plaintiff states she did not have significant difficulty getting to the nursing units from her first floor office because her office and the nursing units were all within a close proximity (approximately ten feet) of the elevator. (*Id.* at ¶¶ 13-16.)

Plaintiff's supervisor during most of her employment was Doreen Crenshaw, Director of Nursing. (Dkt. 20, at 10.) Crenshaw possessed the authority to recommend discipline for her subordinates to human resources. (*Id.*) Crenshaw testified that she knew Plaintiff suffered from lipedema as soon as she met her, both because she noticed the condition and because Plaintiff disclosed it to her. (Dkt. 22-6, at 4-5.) Crenshaw also testified that she understands what lower extremedity lipedema is. (*Id.*)

### A. Pre-FMLA Leave

Defendant points to two purported disciplinary actions that occurred prior to Plaintiff's FMLA leave. In September 2013, Plaintiff received a written warning for working unauthorized overtime. (Dkt. 22-15, at 2.) Plaintiff refused to sign the warning, however, arguing such overtime was authorized. (*Id.*) In December 2013, Plaintiff received a "one-on-one in-service," on the topic of "changing schedules in the computer." (Dkt. 20-10, at 2.)

The session covered: (1) the need to make changes to the schedule in the computer when the changes are made in advance, (2) the need to complete the following month's schedule by the 25th of the preceding month, and (3) that a punch out form is not required if an employee's schedule is changed in advance. (*Id.*) While Plaintiff's disciplinary action record includes this lecture (Dkt. 20-22, at 2), Plaintiff argues the session was for the purpose of training, not prompted by a performance issue. (Dkt. 22, at 12.) Crenshaw also testified that an in-service is used to educate, not as a form of discipline. (Dkt. 22-6, at 7-8.)

From December through April, there is no written record of any disciplinary actions or issues with Plaintiff's job performance. On April 16, 2014, Crenshaw moved Plaintiff's office to the fifth floor. (Dkt. 20, at 11.) According to Defendant, Crenshaw moved Plaintiff's office to "provide Plaintiff with more supervision." (*Id.*) Defendant claims Plaintiff did not answer her work phone as required and "was repeatedly observed socializing with staff, in her office while staff were supposed to be working, which was disruptive to the facility." (*Id.* at 12.) Plaintiff concedes that Crenshaw told her she was moving her office because she "had to be watched" but disputes Defendant's claim that she had issues answering her phone or socializing with staff. (Dkt. 22, at 8.)

According to Plaintiff, the fifth floor office was located at the far end of the hallway—between 50 to 75 feet from the elevators. (Dkt. 22-2, at ¶ 18.) Plaintiff claims she requested that Crenshaw place her in a vacant office next to the fifth floor elevator instead, "so that it would be easier ... to access the elevator." (*Id.* at ¶¶ 19-20.) According to Plaintiff, the request was denied. (*Id.* at ¶ 21.) Plaintiff further claims she made "numerous verbal complaints" to her superiors concerning the office move, explaining that "it was painful ... to walk to the office due to [her] lipedema and that it was difficult ... to get to different parts

3

of the facility because [her] office was too far away from the elevator." (*Id.* at ¶¶ 24-25.) Defendant admits Plaintiff requested a different office, but contends the office she sought was actually *farther* away from the nearest elevator, and Plaintiff merely requested it because it had a window. (Dkt. 20, at 12.) Defendant argues Plaintiff made no complaint about having to walk a longer distance to reach her fifth floor office, nor did she make any complaints "about any alleged disability." (*Id.*)

### B. FMLA Leave

Plaintiff states her lipedema got worse after her office was moved to the fifth floor because she had to walk much more than she did previously. (Dkt. 22-2, at ¶ 29.) On May 6, 2014, Plaintiff was hospitalized after her right leg became extremely swollen. (*Id.* at ¶ 30.) Her doctor took her off work from May 7–May 19. (Dkt. 22-11.) Plaintiff notified Crenshaw that her doctor had placed her on medical leave on May 7, 2014. (Dkt. 22, at 9.) Crenshaw admits she responded by indicating to Plaintiff that "her role [wa]s a critical position that need[ed] to be filled." (Dkt. 22-9.) Plaintiff claims Crenshaw also told her that they could not hold her job for her. (Dkt. 22-10, at 3.) Plaintiff submitted her FMLA paperwork on May 28, which stated Plaintiff may continue to be incapacitated intermittently, and that it may be medically necessary for Plaintiff to be absent from work during subsequent flare-ups. (Dkt. 22-12, at 4-5.)

### C. Post-FMLA Leave

Four days after returning from FMLA leave, Plaintiff was placed on a performance improvement plan. (Dkt. 22-13.) Defendant contends the improvement plan was implemented because of Plaintiff's "continuing deficient work performance." (Dkt. 20, at 14.) Crenshaw alleges there were "numerous derelictions of duty" including, for example,

inaccuracies on staffing sheets, verbal promises to change the schedule that were not memorialized, failure to finalize schedules in a timely manner, and failure to input new phone numbers for nursing staff. (*Id.* at 14-15.) Plaintiff denies each alleged "dereliction" and says she only signed the plan because she feared she would lose her job if she did not. (Dkt. 22-2, at ¶¶ 33-46.) Throughout May and June, both Plaintiff and Crenshaw sent several emails to superiors detailing issues between them and explaining their respective views regarding Plaintiff's purported performance issues. (*See, e.g.*, Dkt. 20-15; Dkt. 22-9; Dkt. 22-10, Dkt. 22-18.)

On June 20, 2014, Plaintiff switched two nursing assistants' assignments per request, due to a personality conflict. (Dkt. 22-2, at ¶¶ 53-54.) Plaintiff contends she notified the unit managers of the switch and instructed them to inform her if any issues arose. (*Id.* at ¶ 55.) Three hours later, Plaintiff was informed by one of the unit managers that one of the nursing assistants did not come in to work. (*Id.* at ¶ 56.) Plaintiff states she immediately contacted the nursing assistant, and found out that the assistant had resigned. (*Id.* at ¶ 57.) The unit to which the nursing assistant was supposed to report was understaffed as a result, but Plaintiff argues it was not due to any of her actions. (Dkt. 22, at 13-14.)

Three days later, Crenshaw submitted a written recommendation for disciplinary action against Plaintiff based on the June 20 incident. (Dkt. 22-17.) On June 26, Plaintiff states she experienced anxiety and requested the day off under intermittent FMLA.[1] (Dkt. 22-2, at ¶ 61.) On that same day, Crenshaw submitted another written recommendation for disciplinary action for Plaintiff, citing poor time management, failing to post the nursing

---

[1] According to Plaintiff's FMLA papers, anxiety is a symptom of Plaintiff's medical condition. (Dkt. 22-12, at 4.)

5

schedule for July, and failing to timely manage call-ins from the nursing staff. (Dkt. 22-20, at 2.) On June 27, Defendant terminated Plaintiff's employment. (Dkt. 22-21.)

## II. Summary Judgment Standard

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (internal citation omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering the material facts on the record, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## III. Analysis

### A. ADA

Plaintiff alleges Defendant violated the ADA by terminating her employment due to her disability. Specifically, Plaintiff claims she verbally requested an office that would require less walking due to her condition; the request was not granted and Plaintiff's employment was terminated shortly thereafter. (Dkt. 1, at ¶¶ 11-12.) The ADA prohibits discrimination against a qualified individual on the basis of a disability. 42 U.S.C. § 12112.

Employers must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless that employer can show the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A).

Plaintiff relies on indirect evidence for her discriminatory discharge claim, and as such, the burden-shifting approach set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) is appropriate. To establish a prima facie case of discrimination under the ADA, Plaintiff must show she: (1) is disabled; (2) is otherwise qualified for the position; (3) suffered an adverse employment decision; (4) her employer knew or had reason to know of her disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011). Once a prima facie case is made by Plaintiff, the burden shifts to Defendant to articulate a non-discriminatory reason for the termination. Then, the burden shifts back to Plaintiff to show that Defendant's explanation is pretextual. *Id.* at 259.

### 1. Prima Facie Case

Defendant contends Plaintiff cannot satisfy the first or fourth elements of a prima facie discrimination case. First, Defendant argues Plaintiff does not have a disability. (Dkt. 20, at 20.) The Court does not find this argument availing. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Under the ADA, "major life activities" include walking and standing. *Id.* Plaintiff has testified that her medical condition affects her ability to "walk more than 100 feet without taking a break" and "stand for an extended period of time." (Dkt. 22-2, at ¶¶ 7-8.) She further states she experiences severe pain in her legs and

7

needs assistance completing tasks such as "cleaning, changing [her] clothes, and getting in and out of vehicles." (*Id.*) The Court is satisfied that Plaintiff has sufficiently alleged that her lipedema qualifies as a disability that substantially limits one or more major life activities.[2]

In addition, Defendant contends Plaintiff cannot satisfy that Defendant "knew or should have known that Plaintiff had a disability." (Dkt. 20, at 22.) However, Plaintiff's supervisor, Doreen Crenshaw, testified that she knew what lipedema was and knew that Plaintiff suffered from lipedema as soon as she met her, both by noticing the condition and because Plaintiff disclosed it to her. (Dkt. 22-6, at 4-5.) In addition, Plaintiff testified that after her office was moved to the fifth floor, she requested reasonable accommodation on multiple occasions. (Dkt. 22-2, at ¶¶ 20, 25-26.) Crenshaw admits Plaintiff made a request for a different office location, but disputes that the request was based on a need to accommodate her lipedema. (Dkt. 20-8, at 20-21.) The Court finds that there is at least a genuine issue of fact as to whether Defendant knew or should have known that Plaintiff had a disability.

### 2. Legitimate, Non-Discriminatory Reason for Termination

Defendant presents several legitimate, non-discriminatory reasons for Plaintiff's termination. As described above, over the course of her employment, Plaintiff was disciplined for purportedly working overtime without authorization, failing to complete the monthly schedule when due, failing to timely notify the proper people of scheduling

---

[2] Defendant notes that Plaintiff, in response to the question, "Do you think you have a disability," testified "I don't have a disability. I know I have a health issue. ... this is ... who I am." (Dkt. 20-2, at 11.) This testimony does not persuade the Court that Plaintiff does not suffer from a physical impairment that substantially limits major life activities.

8

changes, and committing other infractions. The burden thus shifts back to Plaintiff to prove that Defendant's stated reasons for her termination were a pretext for discrimination.

### 3. Pretext

A plaintiff can demonstrate evidence of pretext in three ways: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action." *Till v. Spectrum Juvenile Justice Servs.*, 805 F. Supp. 2d 354, 363 (E.D. Mich. 2011) (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996)). To show that Defendant's proffered reasons for Plaintiff's termination were pretextual, Plaintiff must "produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Adams v. Tennessee Dep't of Fin. & Admin.*, 179 F. App'x 266, 272-73 (6th Cir. 2006) (internal citation omitted).

Defendant argues summary judgment is appropriate because Plaintiff's only support for showing pretext are self-serving statements.[3] (Dkt. 23, at 3.) "[S]elf-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment." *Lowe v. Hamilton Cty. Job & Family Servs.*, No. 1:05CV117, 2009 WL 818960, at *15 (S.D. Ohio Mar. 27, 2009) *aff'd sub nom. Lowe v. Hamilton Ct. Dep't of Job & Family Servs.*, 610 F.3d 321 (6th Cir. 2010) (citation omitted). The Court acknowledges that a significant portion of Plaintiff's support comes from her declaration. However, there is additional evidence corroborating Plaintiff's self-serving statements.

For support that the proffered reasons for her termination were pretextual, Plaintiff points to Crenshaw's statements regarding Plaintiff's absence, as well as the timing of the

---

[3] The Court rejects Defendant's argument that the Court must not consider Plaintiff's declaration for failure to comply with 28 U.S.C. § 1746.

9

disciplinary actions in relation to her requests for accommodation and FMLA leave.[4] The first day of Plaintiff's leave, Crenshaw admits she told Plaintiff that her role was "critical" and "need[ed] to be filled." (Dkt. 22-9.) Plaintiff contends Crenshaw also told her she could not hold her job open for her. (Dkt. 22-10, at 3.) Four days after returning from leave, Plaintiff was issued a performance improvement plan, citing infractions Plaintiff has consistently disputed and for which she claims she received no verbal or written warnings. (Dkt. 22-13.) During the same time period, Plaintiff alleges she made numerous complaints concerning her office move and how it was adversely affecting her lipedema. (Dkt. 22-2, at ¶¶ 24-26.) Plaintiff's FMLA papers stated that her condition may require subsequent absences from work. (Dkt. 22-12.) Plaintiff took an additional one-day FMLA leave in June, and was terminated the following day. (Dkt. 22-21.) Based on the above, Plaintiff contends a reasonable factfinder could conclude Defendant's proffered reasons for termination were pretextual. When viewing the facts in the light most favorable to Plaintiff, the Court finds there are disputed issues of fact as to whether Defendant's nondiscriminatory reasons for terminating Plaintiff constitute a pretext for discrimination. Summary judgment at this time, therefore, is not appropriate.

### B. FMLA Claim

---

[4] Plaintiff also provides support for her argument that the pre-FMLA leave disciplinary actions—the write-up for working unauthorized overtime and the one-on-one in-service—either had no basis in fact or were insufficient to motivate her termination. First, Plaintiff has consistently challenged the write-up for unauthorized overtime, as evidenced by her refusal to sign it when issued. (Dkt. 20-9.) Second, Crenshaw admits that the one-on-one training was educational, not disciplinary. (Dkt. 22-6, at 7-8.)

An employer is prohibited from taking adverse action against an employee in retaliation for exercising his or her rights under the FMLA. 29 U.S.C. § 2615(a)(2). Because Plaintiff again relies on circumstantial evidence to support her FMLA retaliation claim, the Court applies the *McDonnell Douglas* burden-shifting test. *See Clark v. Walgreen Co.*, 424 F. App'x 467, 472-73 (6th Cir. 2011). To establish a prima facie case of retaliatory discharge under the FMLA, Plaintiff must show that (1) she availed herself of a protected right under the FMLA by notifying Defendant of her intent to take leave, (2) she suffered an adverse employment action, and (3) there is a causal connection between Plaintiff's exercise of an FMLA right and the adverse employment action. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

Defendant argues Plaintiff cannot make out a prima facie case of retaliation because there is no causal connection between Plaintiff's exercise of an FMLA right and her termination. (Dkt. 20, at 24.) Plaintiff responds that the causal connection is established by the temporal proximity between her FMLA leave and the adverse employment action against her. (Dkt. 22, at 26-27.) The Sixth Circuit has found that "[t]emporal proximity can establish a causal connection between the protected activity and the unlawful employment action in the retaliation context." *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006). Plaintiff was terminated within six weeks of her initial FMLA leave, and one day after her subsequent FMLA leave. As described in more detail above, the temporal proximity is sufficient to sustain Plaintiff's burden of establishing a prima facie showing of a causal connection between Plaintiff's exercise of an FMLA right and her termination.

Defendant has offered several legitimate non-discriminatory reasons for terminating Plaintiff. The Court finds, however, as with her discrimination claim, Plaintiff presents

11

sufficient evidence to show at least genuine issues of fact as to whether these legitimate reasons are pretext for retaliation. Plaintiff has consistently disputed all alleged performance issues, by either refusing to sign disciplinary write-ups or emailing her concerns to superiors. When Plaintiff took her first FMLA leave, she contends Crenshaw stated her position could not be held, as it was "critical" and "need[ed] to be filled." (Dkt. 22-9.) The FMLA papers submitted to Defendant stated Plaintiff may subsequently require additional intermittent absences from work. (Dkt. 22-12.) When viewed in the light most favorable to Plaintiff, a jury could reasonably conclude that the cited reasons for termination were pretextual. Because material issues of fact exist as to whether Defendant's reasons were a pretext for FMLA retaliation, summary judgment is precluded.

## IV. Conclusion

Being fully advised in the premises and having read the pleadings, Defendant's motion for summary judgment is DENIED.

SO ORDERED.

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 16, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 16, 2016, by electronic and/or ordinary mail.

S/Carol J. Bethel
Case Manager